## ED. McCORMICK v. JAMES H. DALTON.

CONTRACT — *Signing* — *No Duress.* What will constitute duress must depend upon the circumstances of each particular case. But where D. claims he had a parol contract with M. for the grading of a mile of the roadbed of a railway, at a stated price per cubic yard, and that M., desiring to abrogate the verbal contract, demanded of him the signing of a written contract for one-half mile only, of the heaviest work of the grading, at the same price per cubic yard, and, upon his refusing so to do because the written contract did not correspond with the verbal agreement, M. said to the 'men working for him, "I will stand good for no more work you do for D., and D. can stop at once," and D., on account of his financial condition, was unable to carry on the work unless M. paid the men, and after studying over the matter a few days signed the written contract, *held*, that the contract cannot be said to have been signed by D. under duress.

*Error from Phillips District Court.*

THIS action was commenced by *Dalton* against *McCormick*, on the 22d day of November, 1887, for the recovery of $1,-008.11 damages, which Dalton claimed to have sustained by reason of McCormick's refusal to allow him to perform and complete certain railroad grading, according to the terms of an alleged verbal contract. The plaintiff below alleged, among other things, in his petition:

"That on or about the 18th day of July, 1887, he entered

into a verbal contract with McCormick to do the grading of one mile of the roadbed of the Chicago, Kansas & Nebraska railway, in Phillips county, in this state, at and for the price of 13 cents per cubic yard."

The answer of McCormick denied generally the allegations of the petition, and alleged that the contract, and the only contract ever entered into between the parties, was a written contract for the grading of one-half a mile of roadbed, being a part of the roadbed mentioned in the petition, located between the west end of station 3,335 and the east end of station 3,367, and that all the conversation had between the parties about any contract for grading was finally reduced to writing and then signed by both parties. The trial of the case commenced on September 9, 1889. The jury returned a verdict for Dalton, assessing the amount of his recovery against McCormick at $609.50. The court rendered judgment upon the verdict of the jury. McCormick excepted, and brings the case here.

*G. A. Spaulding*, for plaintiff in error:

Dalton certainly was not without a remedy, and his testimony; at the most, could only be said to establish the fact that he preferred the terms of the contract to a lawsuit; that is, if there had been a previous oral contract, he preferred the terms of the written contract to an action on the oral one; and that, where he had no fear or cause for fear of loss, certainly it cannot be said, even taking the testimony as true, that the mere declaration by defendant below, that he would not stand good for work done, or that plaintiff below could sign the contract or do the other thing, was duress of goods, in the absence of any showing that he, the plaintiff below, did not have an adequate remedy at law. See *Cable v. Foley*, 47 N. W. Rep. 1136; *Hackley v. Headley*, 8 id. 511; *Peckham v. Hendren*, 76 Ind. 47; *Emmons v. Scudder*, 115 Mass. 367.

*N. B. McCormick*, and *Frank McKay*, for defendant in error:

We have carefully examined the authorities cited by counsel on the question of duress, and while they may be and no doubt are good law in cases to which they are applicable, we fail to find any application of any of them to this case. The case of *Cable v. Foley*, 47 N. W. Rep. 1136, appears to have no application, for the reason that in that case the written contract covered entirely the same subject-matter as the oral contract, whereas, in this case, the contract being severable, the written contract did not cover the entire subject-matter of the oral contract, and a different rule would obtain.

The opinion of the court was delivered by

HORTON, C. J.: Dalton, the plaintiff below, claimed damages for a breach of a verbal contract with McCormick, the defendant below, to grade a mile of the roadbed of a railway. The principal defense was, that after some preliminary conversation between the parties concerning grading, a written contract was finally consummated between them for the grading of one-half a mile only. Upon the trial, the court instructed the jury that, if they believed the written contract was the only one entered into between the parties, Dalton had no case whatever. Dalton testified upon the trial, among other things, that after the verbal contract had been made, and on or about the 14th of August, 1887, a written contract was presented to him by McCormick, which he refused to sign, giving as his reason that the contract was not as previously agreed upon; that McCormick, on his refusal to sign the contract, said to his men, "I will stand good for no more work you do for Dalton," and "that he [Dalton] could sign the contract or stop work;" that he (Dalton) "rested a few days, and, after studying over the matter, signed the contract for the grading." He was unable to carry on the work, on account of his financial condition, unless McCormick paid the men or stood good for their pay. Upon the trial, this evidence was objected to, but the court overruled the objection,

and stated as follows: "This testimony is for the purpose of furnishing an excuse for signing the contract afterward. He [Dalton] did it under duress." The court also instructed the jury as follows:

"The defendant denies *in toto* that he made any contract with the plaintiff for him to grade one mile. On the contrary, he claims that he entered into a written contract with him (which was the only contract he did enter into), which was finally consummated for one-half mile, and that the plaintiff graded the one-half mile, and he paid him for it. Now, if you believe that is the contract, then the plaintiff has no case whatever, and you must find a verdict for the defendant. If they simply had a talk or had negotiations about one mile, but afterward it all culminated in a written agreement for one-half mile, then, of course, the plaintiff cannot recover; but if the contract was a verbal contract for one mile, and afterwards the defendant, by duress and by taking an unfair means, compelled him to accept a written contract for this half mile, and he afterward insisted on his right to grade the other half mile and was not allowed to, the plaintiff may recover the damages he has suffered."

It is apparent from the evidence given by Dalton upon the trial that the execution of the written contract was not procured by duress. (*Cable v. Foley*, 47 N. W. Rep. [Minn.] 1136; *Hackley v. Headley*, 8 id. [Mich.] 511; *Peckham v. Hendren*, 76 Ind. 47; *Emmons v. Scudder*, 115 Mass. 367.) Duress, in its more extensive sense, is that degree of constraint or danger, either actually inflicted or threatened and impending, which is sufficient in severity or in apprehension to overcome the mind and will of a person of ordinary firmness. Text writers divide the subject into "duress *per minas*," and "duress of imprisonment." (See *Anderson v. Anderson*, 9 Kas. 112; *Helm v. Helm*, 11 id. 19; *National Bank v. Croco*, 46 id. 620.) The reply was a general denial, unverified. No duress was alleged.

The remark of the court, that "Dalton signed the contract under duress," followed by the instruction that, if McCormick compelled Dalton by duress to accept the written contract, he was entitled to recover, was misleading, and, under the facts

as disclosed upon the trial, erroneous and prejudicial to the rights of McCormick. As it does not appear from the evidence that any duress, as defined in law, was used by McCormick to obtain the written contract, that feature ought not to have been interjected into the case. The court ought not to have made the remark referred to, or given any instruction concerning duress.

Whether the alleged verbal contract was merged into a subsequent written contract, was a question for the jury to determine, upon proper instructions. Upon the theory of the trial court, the written contract was wholly eliminated from the case, because there could be no merger or any substitution of the written contract for the verbal one, if the written contract was executed under duress.

The judgment of the district court will be reversed, and the cause remanded for a new trial.

All the Justices concurring.