Case 62—PETITION ORDINARY—June 4.

## Brewster v. Miller's Sons Co., &c.

APPEAL FROM JEFFERSON CIRCUIT COURT.
LAW AND EQUITY DIVISION.

1. CIVIL RIGHTS—TRADE—CONSPIRACY.—It is part of every man's civil rights that he be left at liberty to refuse business relations with any person whomsoever, whether the refusal rests upon reason, or is the result of whim, caprice, prejudice, or malice. With his reasons neither the public nor third person have any legal concern, and the exercise by him of his legal rights can not be a legal wrong to another. Appellant brought this action against certain members of the Funeral Directors' Association to recover damages, alleging that they and other members of that association had refused to furnish him the articles, or render the services necessary for the burial of his wife, said refusal being based upon the ground that appellant was indebted to some member of the said association for the burial services of his father, and that, therefore, under the rules of said association no member thereof was permitted to furnish such services until said indebtedness was satisfied. And it is held that while the members of the association might be guilty of a public offense, and a violation of the provisions of chap. 101, of the Kentucky Statutes, if proceeded against by an indictment, yet appellant having asserted no claim for damages to personal character or business reputation resulting from such alleged acts of conspiracy, can not maintain his action.

KINNEY, GREGORY & KINNEY AND KOHN, BAIRD & SPINDLE
FOR APPELLANT.

(Briefs not in the record.)

HELM & BRUCE FOR THE LOUISVILLE COFFIN COMPANY.

1. The Louisville Coffin Company was not engaged in undertaking and was not a member of the Funeral Directors' Association, and it is not alleged that appellant applied to it or was refused by it to furnish a coffin or bury his wife. The only attempt to connect the Louisville Coffin Company with the alleged conspirarcy, is an allegation that it entered into an agreement with the Funeral Directors' Association that it would not sell any of the articles dealt in by it to any funeral director, for use within Jefferson county unless he should be a member of that association, and there was nothing unlawful in such an agreement between them.

2. The plaintiff was required to elect in the lower court and elected to and did prosecute a paragraph which made no mention of the Louisville Coffin Company; after which said case was dismissed as to the Coffin Company, and there is no appeal from the order so dismissing.

HUMPHREY & DAVIE, O'NEAL, PHELPS & PRYOR, AND ALFRED SELLIGMAN FOR APPELLEES.

(No briefs in the record.)

JUDGE PAYNTER DELIVERED THE OPINION OF THE COURT.

The plaintiff, Brewster, is a citizen of Louisville. From the allegations of the petition, there is an association in that city, known as the "Funeral Directors' Association." The defendants in this action are undertakers and members of the association, except the defendant, the Louisville Coffin Co., which is engaged in the business of manufacturing caskets. On the 10th of December, 1893, the wife of the plaintiff died. He went to the defendants, C. Miller's Sons, to engage their services and to buy articles necessary for her burial. They refused to accept employment or furnish the articles necessary for that purpose, because, as they claimed, the plaintiff was indebted to them in the sum of $52 for burying his father. The defendants, other than the Coffin Co., re-

(24)

fused to perform the necessary services and furnish the necessary articles for the burial of plaintiff's wife. This refusal was made because of this claim of C. Mill.r's Sons that Brewster was indebted to them for previous services, etc., as stated. This is not a suit for the violation of a contract made by either of the defendants but because they would not enter into one with the plaintiff and furnish the services and the materials which he desired. It is alleged that the Funeral Directors' Association is a trust and confederation and by reason of the terms and purposes of the trust, combination and conspiracy, the defendants refused to furnish any of the materials or render services, necessary for the burial of the plaintiff's wife, and that the defendants refused for the purpose of enforcing by duress and oppression the collection of the debt due C. Miller's Sons. . The articles of the association and by-laws, which plaintiff claims make it an unlawful trust, and a combination in restraint of trade, are as follows:

Article 5 of constitution reads:

"Each and every member of this association who shall, either directly or indirectly, sell, exchange, give, or hire, any part of his goods or equipments to or from, or in any way aid or assist any funeral director or branch establishment not a member of this association, shall on conviction thereof after a fair and an impartial trial be fined for each and every offense as provided in article 6 of this constitution."

Article 6, section 1, reads as follows:

"If any member of this association be found wilfully guilty of violating any part of this constitution, by-laws, rules

or regulations, that may now or hereafter be adopted for the government of this association, where the penalty is not specified in the laws, shall, if convicted, after a fair and impartial trial and investigation of the same be fined ten ($10) dollars, for the first offense, twenty ($20) dollars for the second offense, fifty ($50) dollars for the third offense and expulsion for the fourth offense."

Article 8, sections 1 and 2 read as follows:

Sec. 1. All manufacturers and dealers in caskets, coffins and funeral directors' supplies of every name and nature whatever, are hereby requested not to sell any article in our line, to any funeral director or other parties, for use within the jurisdiction of this association, unless he or they be members hereof in good standing."

"Sec. 2. If any manufacturer, dealer or traveling salesman of the same, shall not fully and in every respect comply with the requirements of section 1, of this article, then, we, the members of this association, hereby agree and pledge ourselves to withdraw our patronage from him and the house represented, and will not purchase goods from them."

Article 9, sections 1 and 2, reads as follows:

"Sec. 1. All manufacturers, liverymen and dealers in our line of goods who signify their intention to abide by the constitution, by-laws, rules and regulations of this association, who shall hold a judgment or an execution for over three months unpaid, against member of this association, for goods or livery work used in their business as funeral directors are requested to give this association an immediate written notice thereof, stating all facts in the case."

Sec. 2. Any member of the association who shall have

judgment or an execution standing against him, as described in section 1 of this article, without good and sufficient cause, which shall be decided by the members present at any regular meeting, after a fair and impartial investigation, if it be found that the member has met with no unusual misfortune, he shall be expelled, or shall be given not to exceed ninety days to pay the same, and if not paid at the expiration of the given time, he shall then be expelled."

Article 10, section 2, reads as follows:

"Sec. 2. Any member who shall be found guilty of expressing his opinion unfavorably on a reasonable and just bill of any other member to any party not a member hereof, shall if convicted, after a fair trial, be fined according to article 6 of constitution."

Article 14 of constitution reads as follows:

"That there shall be established by the association a delinquent list, upon which shall be recorded the names of all persons who do not pay their bills. The association shall keep this list and furnish members with all names that are handed to be recorded on the same. The members shall each enter in a book for the purpose (which book shall be furnished to each member by the association) all names, amount of indebtedness, date of bill, and funeral director to whom same is owing as soon as received from the association."

Article 4, section 2 of the by-laws of said Funeral Directors' Association, reads as follows:

"The delinquent secretary shall receive from the members, a complete list of all the parties who fail to pay their bills for the burial of their dead, he shall record all such names in a proper book procured by the association. He

shall enter all lists furnished him in his book and immediately send copy of the same to each member of this association, and all members shall be allowed access to the delinquent secretary's book at any time, and to take a copy of the same should they wish to do so. He shall be allowed six dollars for his services.

Article 11, sections 1, 2 and 4 of by-laws are as follows:

"Sec. 1. Members of this association shall furnish a list to delinquent secretary, from time to time, of all parties who do not pay their bills for the burial of their dead."

Sec. 2. No member of this association shall wait upon any person who is indebted to any other member of this association until such indebtedness is settled, except it be for the burial of the person so indebted, in which case the undertaker having charge shall use every endeavor to have the old account settled, and any member who shall furnish articles to a person named in the printed "delinquent list," or who shall persist in furnishing goods after having been notified by another member that they are indebted to him, shall be punished by a fine of not less than fifty ($50) dollars, or a larger amount at the discretion of the association."

Sec. 4. No member of this association shall accept any order for goods or work from any one who has previously called in another member, and with whom the party could not make satisfactory financial arrangements, without said member of the second part paying all claims of said member of the first part, and taking all chances for collection on his own responsibility, as no protection will be afforded him through the medium of the delinquent list."

Article 12, sections 1, 2, 6, 7 and 9, are as follows:

"Sec. 1. Any member of this association who shall purchase goods of any manufacturer, dealer or jobber who is not a member of or recognized by the National Burial Case Association shall be fined in the sum of fifty dollars.

Sec. 2. Whenever there shall be a member of this association located in a suburban village or town where there is a local cemetery, said members shall, if they desire, have the association establish a price for hearses and carriages to said cemetery, but in no case shall said member or members be allowed to hire hearses and carriages for less than published price-list to any cemetery other than the ones mentioned in said exceptions, and any violation of the above section shall be punished according to article 6 of the constitution."

"Sec. 6. Whenever a member of this association shall be called upon to superintend a funeral for which he does not furnish a case or casket a charge shall be made of not less than five ($5) dollars for personal services, and a reasonable larger amount shall be charged should the engagement require extra attention, and any neglect to make such charge shall lay the member so doing liable to penalties as per article 6 of constitution.

"Sec. 7. All members of this association are allowed to make a discount of five per cent. on all funeral bills when a case or casket is furnished when said bills are paid within thirty (30) days from date of burial, and any excess of five per cent. is positively prohibited, and no discount shall be allowed on bills where no case or casket is furnished."

"Sec. 9. It shall be the duty of each member of this association, should he know of any other member of this associa-

tion who is violating the constitution, by-laws, rules or regulations, to report the same with proof to the executive committee."

It is contended that the association is a violation of section 3915, chapter 101, of the Kentucky Statutes, which reads as follows:

"That if any corporation under the laws of Kentucky, or under the laws of any other State or country, for transacting or conducting any kind of business in this State, or any partnership company, firm or individual, or other association of persons, shall create, establish, organize or enter into, or become a member of, or a party to, or in any way interested in any pool, trust, combine, agreement, confederation or understanding with any other corporation, partnership, individual or person or association of persons, for the purpose of regulating or controlling or fixing the price of any merchandise, manufactured articles or property of any kind, or shall enter into, become a member of, or party to, or in any way interested in any pool, agreement, contract, understanding, com bination or confederation, having for its object the fixing, or in any way limiting amount or quantity of any article of property, commodity or merchandise to be produced or manufactured, mined, bought or sold, shall be deemed guilty of the crime of conspiracy, and punished therefor as provided in the subsequent sections of this act."

Section 3917 of this chapter imposes a penalty, by way of fine or imprisonment or both for the violation of section 3915..

Section 3918, declares that a contract, agreement or understanding in violation of provisions of the section of the act,

shall be null and void; and any purchasers of property or article, or of any commodity, from any individual, company or corporation transacting business contrary to the sections of the act shall not be liable for the price or payment of such article or commodity or property, and may plead and rely on the act as a complete defense to any suit for such price or payment.

It is hardly necessary to observe that this is not an indictment against the members of the Funeral Directors' Association for the violation of section 3915, nor is it an action to enforce any contract or agreement made in violation of that section or the chapter of which it is a part. This association may be guilty (which we do not decide, as the question does not arise here,) of the violation of this chapter of the Kentucky Statutes, and yet the plaintiff would not have a cause of action against the members thereof. Although the association might control and fix the price of property, merchandise, etc., and in so doing, be guilty of a violation of the statute, yet if they refused to sell such merchandise or property, it does not follow that one could maintain an action for damages, because of their refusal to sell to him. As we have said, this action asserts a claim for damages, because they would not enter into a business transaction with him. The only question which we have to consider in this case, is as to whether the plaintiff is entitled to maintain this action for such refusal. Some of the purposes of the association as expressed in its articles could be in violation of this chapter of the Kentucky Statutes, yet other articles of the association might not be in violation of it, and the purposes as expressed in them be entirely proper and

legal. The part of the articles which we feel is pertinent
to the consideration of the question involved in this case, is,
that which declares that no member of the association shall
wait upon any person who is indebted to any other member
of the association, until such indebtedness is settled, except
it may be for the burial of the person so indebted, and that
where a member violates such provision of the laws of the as-
sociation, he is to be fined a given amount.

We think Mr. Addison lays down the correct rule in his
work on Torts, when he says in section 850, Vol. 2 "a crim·
inal proceeding by way of indictment, lies for the mere act
of conspiring, but a civil action is not maintainable unless
plaintiff has been aggrieved or has sustained actual legal
damage by some overt act done in pursuance of the conspir-
acy." So even if some of the articles of the association consti-
tute a trust or conspiracy, still if there was no overt act done in
pursuance of such illegal provisions which produced "actual
legal damage" to the plaintiff he could not maintain his ac-
tion. It would be a question with which the State should
deal. We do not think the article of the association which
we have said was pertinent to this inquiry is in violation of
the statute or an offense at common law. It simply pro-
vides that the members of the association are not to render
services for, or furnish burial material to any person who
has become indebted to a member of the association and fails
or refuses to discharge it. One has the right to decline to
enter into a business undertaking with any one. The law
does not impose such an obligation upon any one. This be-
ing true, any number of persons can enter into an agreement,
by which they can decline to assume business relations with

or to enter into any contract with one or more persons. If
Brewster was indebted to Miller's Sons, then they had the
right to decline to give him an opportunity to increase his in-
debtedness, or to refuse to furnish material for the burial of
his wife, unless he paid the claim which Miller's Sons as-
serted against him.    As those who are members of the
"Funeral Directors' Association" for a good reason or for no
reason, had the right to decline to render services or furnish
burial material; and if they saw proper to decline to render
services because Miller's Sons asserted a claim against "Brew-
ster" their refusal creates no legal liability against them. It
is immaterial, so far as Brewster is concerned as to what rea-
sons may have influenced them to decline employment or to
refuse to furnish the burial material which he desired.    Mil-
ler's Sons might have asserted a claim against Brewster
which had neither foundation in morals or law, yet if the
members of the association, other than Miller's Sons chose
to be influenced by it, and to decline the employment, &c.,
Brewster has no cause of action against them.    This is not
an action against Miller's Sons for libel or slander, neither
is it one against members of the association for libel and
slander, but as we have said was for an alleged conspira-
cy, etc., of the members of the "Funeral Directors' Associa-
tion."    There is no claim asserted for damage to his person-
al character or business reputation.

Cooley on Torts, 278: "It is a part of every man's civil
rights that he be left at liberty to refuse business relations
with any person whomsoever, whether the refusal rests upon
reason, or is the result of whim, caprice, prejudice, or mal-
ice.    With his reasons neither the public nor third persons
have any legal concern."

Again on page 688 he says: "The exercise by one of his legal rights can not be a legal wrong to another."  *  *  * Whatever one has a right to do, another can have no right to complain of." Haywood v. Wilson, 46 American Reports, and Payne v. Western & Atlantic R. R. Co., 49 American Reports; as to the same effect, in Bohn Manufacturing Company v. Hollis, 54 Minnesota, 223, the court said: "No case can be found in which it was ever held that at common law a contract or agreement in general restraint of trade was actionable at the instance of third parties or could constitute the foundation of such an action.    The court some times calls such contracts "unlawful" or "illegal," but in every instance it will be found that these terms were used merely in the sense of "void" or unenforceable" as between the parties; the law considering the disadvantage, so imposed upon the contract, a sufficient protection to the public.

It was held in Schulten v. Bavarian Brewing Company 9ß Ky., 224, that it was not unlawful for a number of persons to associate themselves together to protect themselves by law ful acts from dishonest debtors; that an agreement similar to the one in question in this case, that they would not sell to one who was indebted to the association, was lawful and for which no action could be maintained.    It was contended in that case as in this that the association was trying to compel the payment of a debt by duress which was asserted against the plaintiff.

In Schulten v. Bavarian Brewing Company, the court held: There was not a sufficient denial that the plaintiff was indebted in the sum claimed to the member of the association, but the court said: "If he was not indebted to the defendant,

the Bavarian Brewing Co., then the defendants were guilty of an unlawful act in trying to make him pay something he did not owe, by refusing to sell him beer." The court did not in that case say what would be a legal consequence of an unlawful act in trying to make him pay something which he did not owe. If a conspiracy had existed in that case or in this case to have compelled the party by duress to pay a sum which he did not owe, and under such force he had paid it, unquestionably an action could have been maintained to recover the sum so paid. Had the conspiracy succeeded in either case, then the damage sustained would have been the amount which had been wrongfully taken from him. The action would be to recover money tortiously obtained.

The case of Carew v. Rutherford, 106 Mass., cited by counsel for appellant, sustains this conclusion. That was an action to recover money which a party had been forced to pay by an unlawful conspiracy. In that case a mechanic was under the necessity to employ a workman to carry on his business; and by this conspiracy in order to obtain a sum of money from him, which he was under no legal liability to pay, induced the workman to leave his employment by deterring or threatening to deter others from entering it, so as to render him reasonably apprehensive that he could not carry on business without paying the money demanded. The court in that case permitted him to recover the money which he had thus paid. The court said in that case: "It was no crime for any number of persons without an unlawful object in view, to associate themselves together and agree they will not work for or deal with certain men or classes of men, or work under a certain price, or without certain con-

ditions." If it be true, as plaintiff alleges, that the article of the association to which we have called attention, was to force him to pay a debt which he did not owe, still no cause of action existed as he did not pay the money demanded.

A party may engage in the grocery business, selling necessaries of life, and a hungry, starving man might call at his place of business and seek to buy such articles of food as he needs, and whilst we would say it was inhuman for the grocerman to refuse to sell him, yet it could not be said that his refusal was unlawful, and that a cause of action could be maintained against him for such refusal. When one desires to bury his dead, it may be an unfeeling act for an undertaker to refuse to furnish necessary material and necessary services to accomplish it, still his refusal to do so does not impose any legal liability upon him. Undertakers are approached by those in great bereavement who desire their services to inter the dead. Under such circumstances they do not feel disposed to demand in advance compensation. Regard for the feelings of those so bereaved forbids that they do so. However, if one has on a previous occasion received the services of the undertaker, and his material, and has refused or failed to pay the bill, it is certainly not unreasonable to refuse to permit him to increase his indebtedness or to render him services. To afford mutual protection against such persons it is not unlawful for the undertakers of the community to associate themselves together and agree to refuse to render a like service to one who has refused or failed to pay such expenses in the past to some member of the association.

There is no allegation that Brewster ever applied to the

Louisville Coffin Co. for the necessary material to bury his wife, but sought to make them liable, because as is alleged that it would not sell any of the articles dealt in by it, to any funeral director to use in Jefferson county, unless he should be a member of the "Funeral Directors' Association of the Falls Cities."

There is no law which attempts to regulate as to whom an individual or corporation shall sell articles of merchandise such as coffins etc., etc.

In this opinion we do not express any views as to whether the members of the "Funeral Directors' Association" have been guilty of a violation of chapter 101 Kentucky Statutes, in the matter of regulating and fixing the price of merchandise, etc., etc., but we simply pass upon the question before us, which is, as to the right of the plaintiff to maintain this action.

The judgment is affirmed.