Davis, J.
It is important to note in this case, as was stated by the trial judge in his charge to the jury, that there was no obligation by custom or express agreement to give to the plaintiff a clearance. If, therefore, an obligation to furnish a clearance existed at all it must have arisen by implication of law; and *419 the whole contention is whether the law imposed such an obligation upon the defendant, under the facts disclosed in this record.
The plaintiff alleges that he was unable to obtain employment after his discharge by the defendant, by reason of the failure and refusal of the defendant to furnish, on request, the plaintiff’s record of service, or a consent and clearance. As there is no testimony in regard to “consent,” that expression of the pleader may be disregarded. The term “clearance” is mentioned in the amended petition as a “card showing that the applicant was in no way connected with said strike,” that is, with the railroad strike in 1894, known as the A. R. U. strike. The plaintiff, Avhen on the witness stand, stated that “a clearance is a paper showing the place of employment, kind of employment, the time and whether the service Avas satisfactory or not.” * * * “if ft was satisfactory it Avould be a clearance; it Avould enable a man to go and sIioav to a railroad company that it was all right, and if his Avork Avas unsatisfactory it would be otherAvise — he had best not shoAV it.” The trial judge, charging the jury, said: “A statement of his record Avith his last employer, as the plaintiff claims, in brief, wras a paper or clearance that it was agreed should be required. It is clai'med that this Avas required so that a railroad company might knoAV Avhether or not he Avas engaged in the A. R. U. strike.” So that the gist of the complaint is that the plaintiff Avas prevented from obtaining employment by the malicious refusal of the defendant to furnish the plaintiff Avith “a statement of his record Avith his last employer.”
Upon the first offer of testimony by the plaintiff, the defendant objected to the introduction of any *420 testimony in the ease on the ground, that there was no case made in the pleadings such as would authorize any recovery. The court overruled the objection, reserving the decision of the question whether the plaintiff had pleaded a good cause of action, until the testimony was all in. In submitting the case to the jury, the court charged in substance, that if the plaintiff agreed, combined or conspired with other railroad companies that neither they nor any of them would employ any man who did not furnish a clearance, that is, a statement of his record from his former employer, and if the defendant, in accordance with such agreement, combination or conspiracy, refused to furnish such statement of his record, with intent to-prevent the plaintiff from obtaining employment from any or all of said railroad companies, then the plaintiff may recover. This instruction to the jury embodies the plaintiff’s theory of his case, and if it is not sound law the plaintiff was not entitled to a judgment, whatever may have been the findings of the jury upon the issues of fact which were submitted to them.
Recurring to the second amended petition, upon which the case was tried, it appears that it is not alleged that the defendant agreed or conspired with other railroad companies to refuse to give to the plaintiff, or to any other discharged employe, a statement of his record, nor is there a scintilla of proof of such a combination; but on the contrary the distinct claim is that such refusal was the individual, malicious act of the defendant. It is the undoubted and unabridged natural right of every individual not to employ, or to refuse to employe, whomsoever he may wish, and he cannot be called upon to answer to the public or to individuals for his judg *421 ment. . Nor can the motives which prompt his action be considered. In general terms, such right is as much inherent in corporate bodies as in natural persons. But whatever one person may lawfully do, two or more 'persons may join in doing. There can. be no such thing as a conspiracy'to do a lawful thing unless by unlawful means. If one railroad company may lawfully refuse to continue in its employ a person who has been engaged in a Avar upon its interests, called a strike, or avIio has shown himself to be negligent, incompetent, inefficient or dishonest, there does not appear to be any good reason why a number of railroad companies might not agree among themselves to not employ such a person. Indeed there are obvious reasons, public and private, why they should do so. Por example, it Avould be very inconsistent and unjust, if Avhile holding railroad companies to strict accountability for the negligence of their servants, Ave should restrict them in the natural right to protect themselves' in the matter of the selection of their employes. That such a combination or agreement may be lawfully made and executed is held in the folloAving Avell considered cases: Macauley v. Tierney, 19 R. I., 255; Bohn Mfg. Co. v. Hollis, 54 Minn., 223; Brewster v. Miller, 101 Ky., 368; Delz v. Winfree, 80 Tex., 400. And see Cooley on Torts, (2 ed.) 329. If, therefore, the jury found the affirmative of the issue of fact submitted, Avhether the defendant combined with other companies in an agreement not to employ any person Avho did not furnish a statement of his record with his former employer, it would afford no basis for recovery, unless it should appear that this agreement, which is prima facie valid, Avas brought about by some illegal act of the defendant. If the defendant, by fraud, falsehood or force, had *422 brought about a refusal to employ the plaintiff, it would have committed a positive wrong against the plaintiff which would have been actionable. Of this, however, there is not a scintilla of proof. But an agreement to tell the truth about the plaintiff, or a refusal to say anything about him would not make an otherwise legal concert of action an illegal one and authorize a recovery against the defendant. Says Field, C. J., in Vegelahn v. Guntner, 167 Mass., 103: “I am not convinced that to persuade one man not to enter into Ihe employment of another, by telling the truth to him about such other person and his business is actionable at common law, whatever the motive might be.” The Supreme Court of Georgia, in passing upon the constitutionality of a statute which required certain classes of corporations to communicate to their discharged employes the reasons for discharge, under heavy penalty in the name of damags, said: “A statute which undertakes to make it the duty of incorporated railroad, express and telegraph companies to engage in correspondence of this sort with their discharged agents and employes, and which subjects them in each case to a heavy forfeiture, under the name of damages, for failing or refusing to do so, is violative of the general private right of silence enjoyed in this state by all persons, natural or artificial, from time immemorial, and is utterly void and of no effect. Liberty of speech and of writing is secured by the constitution, and incident thereto is the correlative liberty of silence, not less important nor less sacred. Statements or communications, oral or written, wanted for private information, cannot be coerced by mere legislative mandate at the will of one of the parties and against the will of the other.” Wallace v. Railway Co„ 94 Ga., 732.
*423 The theory of the circuit court that silence, or refusal to render a statement on request, is in the nature of a slander, and, if its effect is to prevent the person from obtaining employment, it is an actionable wrong, is untenable. As stated at the outset, there was between these parties no contract for a statement, and there is no statute in Ohio requiring it; indeed, it is doubtful whether one could be made that would be valid. Wallace v. Railway Co., supra. It is conclusively shown in Railway Co. v. Jenkins, 174 Ill., 402, 405, that no such duty is imposed on the employer by the common law. For convenience of reference, some of the authorities there cited are quoted here: “On examination it will be perceived that this right of an employer t6 give, as it is termed, a ‘character’ to his ex-employe is nothing more than a consequence of the right to communicate one’s belief. * * * No one is under any obligation to make such a communication. He does not owe it as a duty, either to the employer or the employe, to make any communication on the subject.” Townshend on Slander and Libel, (4 ed.) 425. “It is not legally compulsory on a master or mistress to give a discharged servant any character, it matters not how much a servant is entitled to character in fairness or how cruel the refusal might be.” 14 Am. & Eng. Enc. Law, (1 ed.) 799. “It is clear, however, that in the absence of any specific agreement to that effect there is no legal obligation binding a person who has retained another as a servant, to give that person any character at all on dismissal, and that no action will lie against him for refusing to do so.” Smith on Master ■& Servant (Text Book ed.), 380, 381. “The master is under no legal obligation to give a testi *424 monial of character to his servant.” 2 Parsons on Contracts, *43-44.
Without pursuing this discussion further it may be said that the views of the courts below respecting the law governing this case, and as given in the charge to the jury, were entirely wrong, and that upon the facts which the jury were authorized to find upon the issues submitted to them, and which they are presumed to have found, the judgment ought to have been for the defendant.

Reversed and judgment for defendant.

Burket, Spioar and Shauck, JJ., concur.