## COLUMBIA PICTURES CORPORATION v. BI-METALLIC INV. CO.

No. 9198.

District Court, D. Colorado.

Aug. 8, 1930.

Blount, Silverstein & Rosner, of Denver, Colo., for plaintiff.

Benedict & Phelps and Emmett Thurman, all of Denver, Colo., for defendant.

SYMES, District Judge.

On demurrer to the complaint.

Passing the formal allegations of the complaint, it appears that plaintiff is a producer of photoplays, and distributes and licenses

the same for exhibition to theater operators throughout the United States. Its business is denominated as that of "distributor." Defendant is the owner of and operates a theater in Denver, and exhibits photoplays.

On the 8th of December, 1928, the defendant agreed in writing with the plaintiff to take 29 "first-run" photoplays, or movie pictures, under license of the plaintiff, and exhibit and pay for the same at a fixed rate, and within a certain time, all in accordance with the terms of the contract, a copy of which is attached to the complaint. Modifications of this contract, later agreed to, are not material to this discussion.

Of the 29 pictures specifically enumerated, defendant, according to the complaint, failed and refused to accept, exhibit, or pay for 15, thus breaching the contract and damaging plaintiff in the sum of $12,550, for which judgment is prayed.

Counsel for defendant, in support of the demurrer, argues that the contract is illegal, violates the Sherman Anti-Trust Act (15 USCA §§ 1-7, 15), having been used in furtherance of a conspiracy in restraint of trade, and that no cause of action can arise for the alleged breach of the same.

It is agreed by counsel that the form of agreement set up in the complaint is known in the trade as the standard exhibition contract, adopted by all distributors of motion pictures, and is really forced upon the exhibitors; that is to say, the plaintiff, and other "distributors" using this contract, distribute approximately 98 per cent. of the motion picture films in the United States; that the defendant, or any other exhibitor, in order to secure sufficient pictures for its regular business, must, of necessity, deal with this group, and subscribe to this form drawn up and promulgated by the trade after a long series of negotiations between them and representatives of the exhibitors.

At this conference an agreement upon rules and regulations relating to the arbitration clause, section 18 of the contract, was also arrived at. This form, together with these rules of arbitration, have been modified from time to time. Section 18 requires compulsory arbitration of all disputes between the parties arising out of the agreement. The distributors enforce this collectively by refusing to license films to exhibitors who violate any of its terms.

Counsel, in support of the demurrer, rely upon United States v. Paramount Famous Lasky Corp. (D. C.) 34 F.(2d) 984. In that case Judge Thacher held that section 18 providing, as it does, for compulsory arbitration, and fostered by an understanding between the distributors that any exhibitor, whether or not a party to the agreement adopting the form of contract, who should not abide by the terms of the same, would not receive films from other distributors, was evidence of a conspiracy in restraint of trade in violation of the Sherman Anti-Trust Act (15 USCA §§ 1-7, 15). The action was in equity, brought by the United States against the Paramount Famous Lasky Corporation and others to enjoin a conspiracy in restraint of trade. The court, for the reasons stated, held for the government.

But Judge Thacher's able discussion and the law of that case are not in point here. This is a suit at law on contract between private parties. Eliminating section 18, the contract is clearly one that the parties might lawfully enter into. This action, reduced to its simplest terms, is to recover the agreed price for goods sold and delivered. The arbitration clause is not invoked nor referred to in the complaint, and unless brought to the attention of the court by pleadings not yet filed, is not necessary to a decision of the issues presented by the bill, which on demurrer are to be taken as true. As the pleadings stand now, the defendant owes the plaintiff an agreed amount as rent or license fees for pictures it refused to take and pay for, in violation of the contract.

There is no illegality in such an agreement. It is not impeached except by the charge that the plaintiff, with others, not parties to the contract or this suit, entered into an unlawful combination in restraint of trade. While there may be something in the charge that the seller was thereby enabled to control and arbitrarily fix prices for its pictures, counsel do not charge any actual duress, or anything that makes the payments provided for involuntary or compulsory. The mere fact that the defendant, as a practical matter, was compelled to make purchases from the illegal combination, because of its control of the supply of pictures, does not operate to make payments already made, or to be made, involuntary. See Radich v. Hutchins, 95 U. S. 210, at page 213, 24 L. Ed. 409. The defendant, with all the circumstances in mind, signed the contract, and his rights must be measured thereby, and not by the motives actuating the parties.

"Complainant may be an obnoxious combination, but that does not excuse defendant for appropriating its property. Such a doctrine would justify stealing stolen goods from the thief, or despoiling any real or supposed trust of all its holdings." United States Fire Escape Co. v. Halsted Co. (D. C.) 195 F. 295, at page 297.

In Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 22 S. Ct. 431, 46 L. Ed. 679, the company brought an action against Connolly on notes given in payment of the purchase by the defendant of sewer pipe at an agreed price. The defense set up was that the plaintiff had been a trust or combination of divers persons and corporations, organized for the express purpose of creating and carrying on restrictions in the business of buying and selling sewer pipes, etc.; that prior to the making of the contracts, the plaintiff corporation entered into a combination, which was an illegal restraint of trade, etc.

The Supreme Court held that the defense could not be maintained; that, assuming that the alleged combination was illegal, it did not follow that the defendant could refuse to pay for pipe bought by him under contracts with the plaintiff; that the illegality of the combination did not prevent the plaintiff from selling pipe, passing title to any one desiring to buy; and that the buyer could not justify a refusal to pay for what he bought and received by proving that the seller had previously, in the prosecution of its business, entered into an illegal combination in reference to the sale of pipe.

The attack here is collateral. Granting that the arbitration clause is all that is claimed, the point is immaterial, unless it later appears that the plaintiff must rely upon it in order to prove his case.

In 13 C. J. p. 503, it is said: "That it was no defense to an action for goods sold and delivered that plaintiff was a member of an illegal trust or combination to interfere with the freedom of trade and commerce, since the illegality of the combination was collateral to the contract of sale, and could not taint it with illegality or make it contrary to public policy." See also Small Co. v. Lamborn & Co., 267 U. S. 248, at page 252, 45 S. Ct. 300, 69 L. Ed. 597, holding that the Sherman Anti-Trust Act (15 USCA §§ 1-7, 15) does not, under the facts here presented, relieve the buyer from paying.

The demurrer is overruled, and exceptions allowed.