## METRO–GOLDWYN–MAYER DISTRIBUTING CORPORATION v. COCKE.

### No. 3943.

Court of Civil Appeals of Texas. Amarillo.
Jan. 18, 1933.

See, also (Tex. Civ. App.) 41 S.W.(2d) 645.

E. E. Diggs, of Childress, and J. Robert Rubin, of New York City, for appellant.

R. H. Cocke and R. H. Templeton, both of Wellington, for appellee.

HALL, C. J.

The appellant corporation, engaged in distributing copyrighted photoplays and films, sued the defendant Cocke to recover $1,507.50 and interest, alleging the breach of five different contracts entered into between the parties, which provided for the exhibition by Cocke in his theater at Wellington of motion pictures and films to be furnished him by the appellant. The contracts describe the several films included in each of them respectively by production number and title and state the rental value. Appellant alleged compliance with the contracts on its part, breach by the defendant, and concluded with a prayer for damages in an amount represented by the contract prices.

Defendant answered by numerous exceptions, a general denial, and specially alleged·

that the contracts sued upon were null, void, and unenforceable by reason of their being in violation of the anti-trust laws of the national and state governments, in that they were made to control and were in restraint of trade and commodities and attempted to create a monopoly of the moving picture business. That the contracts were not voluntarily entered into by the defendant; that he was compelled to sign them with the terms and provisions therein printed in order to exhibit any motion picture films in his theater at Wellington, because plaintiff and other distributors refused to furnish him any films until he executed and signed said contracts with all of the unilateral, arbitrary, illegal, and unreasonable terms thereof. He denied that plaintiff was damaged in the sums or amounts alleged and that such damages, if any, were sums which plaintiff may have expended in procuring the execution of the contracts and expenses to date of the alleged breach. He further pleaded that the contracts were illegal because of the provisions for arbitration contained therein; that such provisions violated the Sherman Anti-Trust Law (15 USCA §§ 1–7, 15 note) and the state statutes against trusts (Vernon's Ann. Civ. St. art. 7426 et seq.). That the contracts were unenforceable because they provided, as is printed in red ink therein, that plaintiff had the right to adopt the provisions of a new standard exhibitors contract to be made by the Motion Pictures Producers & Distributers of America, Inc., which contract, when so promulgated, would change the terms, position, and prices contained in the contracts sued upon. That such provision is unreasonable, unjust, unilateral, and arbitrary. That plaintiff did not comply with provision D in said contracts which required it to deliver the films to the common carrier or tender any of the photoplays named in each of the said contracts, and had failed to comply with stipulation G which obligated plaintiff to give defendant, as exhibitor, four weeks' notice in writing of the date on which each photoplay would be released and made available for use.

Defendant further alleged that he sold and assigned his interest in the Rialto Theater in February, 1928, to Nelson & Simpson, who offered and agreed to exhibit in said theater the said photoplays named in the contracts, and said purchasers requested plaintiff, in writing, to furnish said photoplays, which plaintiff refused to do, in violation of the terms of said contracts.

Plaintiff filed a supplemental petition containing numerous exceptions, denied that Nelson & Simpson, the assignees of defendant, had agreed to exhibit the photoplays contracted by defendant, but on the contrary refused to accept or pay for them. That after plaintiff had filed its complaint with the Arbitration Board, defendant wrote to the secretary thereof that he had sold his business to Nelson & Simpson but they were closing the business and could not use the films.

In response to special issues the jury found, in substance, as follows: (1) The contracts sued upon were not voluntarily entered into by the defendant H. F. Cocke; (2) that the appellant, before making complaint against defendant for his failure to receive films, did not give defendant fifteen days' notice that the films or any of them were ready to be delivered to him; (3) that if the films had been tendered to Nelson & Simpson before the complaint was filed with the Arbitration Board against defendant, said films would have been accepted by Nelson & Simpson at less than the contract price; (4) that Nelson & Simpson would have paid for said films 10 per cent. less than the contract price.

Judgment was entered in accordance with the findings of the jury.

■ To the defendant Cocke's allegation that the contracts sued on were not voluntarily entered into by him, and that he was compelled to sign said contracts with the terms and provisions therein printed in order to produce any motion picture films for use in his theater, because plaintiff, as well as other distributors, refused to furnish any motion picture films until the defendant would execute and sign said contracts with all of the unilateral, arbitrary, illegal, and unreasonable terms thereof, the plaintiff urged an exception, which was properly sustained by the court; but we find that evidence was admitted upon such ground of cross-action, and the first issue submitted to the jury was whether the contracts were voluntarily entered into by Cocke. There was error in submitting the issue to the jury, especially after the court had sustained objections to this ground of cross-action.

■■ An effort to recover damages against the appellant company, because it would not enter into such a contract as Cocke desired, is without merit.

As said in 2 Cooley on Torts (3d Ed.) 587: "It is a part of every man's civil rights that he be left at liberty to refuse business relations with any person whomsoever whether the refusal rests upon reason or is the result of whim, caprice, prejudice or malice." Brewster v. Miller's Sons, 101 Ky. 368, 41 S. W. 301, 38 L. R. A. 505; Master Builders' Association v. Domascio, 16 Colo. App. 25, 63 P. 782; Hundley v. Louisville, etc., R. R. Co., 105 Ky. 162, 48 S. W. 429, 63 L. R. A. 289, 88 Am. St. Rep. 298; N. Y., etc., R. R. Co. v. Schaffer, 65 Ohio St. 414, 62 N. E. 1036, 87 Am. St. Rep. 628; Heywood v. Tillson, 75 Me. 225, 46 Am. Rep. 373; McCormick v. Dalton, 53 Kan. 146, 35 P. 1113.

■■ The appellee cites in support of his contention that the contracts were void. Paramount Famous Lasky Corp. v. United States, 282 U. S. 30, 51 S. Ct. 42, 75 L. Ed. 145. That

case has no application whatever to the issues in the instant case. In that case the government was attacking a trust entered into by several film companies, in an effort to dissolve the trust under the Sherman Anti-Trust Law. The case before us is purely one of contract between individuals. The appellee cites 10 Texas Jur. 83, § 48, in support of his contention that the contracts upon which this suit is based were signed under duress. The appellee really did not plead duress, but the record shows that because he owned a building adapted to the exhibition of moving pictures and unless he signed the contracts in question it might have injured his business. This is not duress, nor is it coercion. Prior to the execution of the contracts the parties thereto were dealing at arm's length. Cocke was not indebted to the appellant and no threats were made by appellant or its agents to injure appellee in his business in the event he refused to enter into the contracts, and the record shows that there are numerous other film-producing companies with which Cocke might have contracted. It cannot be contended that there was any duress of person and duress of property exists where a party is required, against his will, to do that which the other party has no right to exact of him in order to receive or enjoy the benefits and privileges resulting from a right of use in his property. 10 Tex. Jur. 83. The same authority says: "To constitute it, [duress] the will must be constrained by the unlawful presentation of a choice between comparative evils, as inconvenience and loss by the detention of property, loss of property altogether, or compliance with an unconscionable demand. There must be a threat to do some act which the threatening party has no legal right to do, or to make some illegal exaction; and there must be imposition or oppression, or such extreme necessity imposed upon the party as will overcome his free agency." Cocke may have signed the contracts against his will, but the record does not show that he entered any protest at the time they were executed. The company had no right to exact of him the making of such contracts and he could have refused to sign them with the stipulations contained therein to which he objects. The films were the absolute property of the appellant company. They had the unquestionable right to fix their own price upon their products and to refuse to take less, and they had the further right to refuse to enter into the contract relations with Cocke except upon their own terms. Cocke does not deny that he agreed to pay the prices set out in the several contracts. In signing them he may have made a bad bargain, but he does not allege fraud or any other equitable ground for relieving him of the obligations which the contracts imposed upon him.

■ It is said in Booth & Bro. v. Burgess, 72 N. J. Eq. 181, 65 A. 226, 232: "Coercion which

results, however directly and intentionally, from the exercise of the absolute right to refrain from contracting, cannot possibly be a tort, because it violates no legal right; it is a mere incidental result of the assertion and enjoyment of a right." Coercion exists where a party, by the unlawful conduct of another, is induced to enter into a contract which deprives him of the exercise of his free will.

As said in 11 C. J. 946: "It may be either actual (direct or positive) where physical force is put on a man to compel him to do the act against his will, or implied (legal or constructive) where the relation of the parties is such that one is under subjugation to the other and is thereby constrained to do what his free will would refuse."

The record fails to show that the appellant sustained any relation whatever to Cocke prior to the execution of the contracts which in any degree subjected Cocke to its power or authority. Appellant is not responsible for the fact that Cocke had invested considerable money in erecting a building and equipping it for a moving picture show. So the response made by the jury to the first issue submitted is immaterial and the court erred in submitting it for the reason that an exception had been previously sustained to that ground of recovery and the finding can form no basis for a judgment.

■■ The record shows that the films or photoplays designated in the contract had been copyrighted. The appellee, by exceptions, insisted that the contracts sued upon were void because, by their terms, they violated both the national and state anti-trust laws. The court correctly overruled these exceptions because the anti-trust laws do not apply to copyrights and for the further reason that a violation of the anti-trust laws by a corporation is not available as a defense to a person dealing with such corporation to release him from liability for debts incurred or contracts creating debts separable from the trust combination. Coca-Cola Co. v. State of Texas (Tex. Civ. App.) 225 S. W. 791; Clark v. Cyclone Woven Wire Fence Co., 22 Tex. Civ. App. 41, 54 S. W. 392; Bauer & Cie v. O'Donnell, 229 U. S. 1, 33 S. Ct. 616, 57 L. Ed. 1041, 50 L. R. A. (N. S.) 1185, Ann. Cas. 1915A, 150; Columbia Pictures Corp. v. Bi-Metallic Inv. Co. (D. C.) 42 F.(2d) 873.

■ The arbitration agreement in the contracts provides that before either party thereto shall resort to any court to determine, enforce, or protect the legal rights of either thereunder, each will submit to the Board of Arbitration all claims and controversies arising thereunder for determination pursuant to the rules of procedure and practice from time to time adopted by such Board of Arbitration. This does not attempt to prevent either party from resorting to the courts where the conditions entitle it or him to sue, nor can the legal

effect thereof be held to oust the courts of jurisdiction. Appellant did not plead the arbitration stipulation as a defense to the cross-action. If it be admitted that the stipulation is void, it would not have the effect of avoiding the entire contract or canceling appellee's indebtedness. Dozier v. City of Gatesville (Tex. Civ. App.) 4 S.W.(2d) 131; Queiroli v. Whitesides (Tex. Civ. App.) 206 S. W. 122. Moreover, the record shows that the reason Cocke did not submit to arbitration was because he had sold his business to Nelson & Simpson before the matter of arbitration came up for consideration.

The third issue inquiring whether, if the films had been tendered to Nelson & Simpson, to whom defendant had sold his picture show, before the complaint was filed, would said films have been accepted by Nelson & Simpson, was a matter foreign to the rights of either party, and that issue, together with issue No. 4, are immaterial.

The other contentions urged in the briefs of both appellant and appellee have been disposed of by the opinion rendered in this case on the former appeal and reported in (Tex. Civ. App.) 41 S.W.(2d) 645.

The case has been tried twice upon the same pleadings and to remand it for another trial would seem to be a useless and expensive proceeding, since it is clear that under the evidence introduced in both trials appellant was clearly entitled to a judgment for the full amount sued for and that the appellee has no valid defense to the action and no right to recover upon any ground asserted in his cross-action. We therefore reverse the judgment, and it is here rendered that the appellant recover the full amount prayed for and that appellee take nothing by reason of his cross-action.

Reversed and rendered.