**TAYLOR–FICHTER STEEL CONST. CO.,
Inc., v. CURTIS et al.**

No. 3609.

Court of Civil Appeals of Texas. Beaumont.

July 5, 1940.

Rehearing Denied Sept. 25, 1940.

Orgain, Carroll & Bell, of Beaumont, and K. W. Stephenson, of Orange, for appellant.

Chas. S. Pipkin, of Beaumont, and Alto V. Watson, II, of Port Arthur, for appellees.

286

O'QUINN, Justice.

Appellant, Taylor-Fichter Steel Construction Company, Inc., was the principal contractor on the Neches River bridge on the Orange-Port Arthur highway. On the 16th day of August, 1937, appellant submitted the following offer in writing to appellees, Mark Curtis and S. G. Pamphilis, doing business as partners under the name of Associated Painting Contracting Company, to do, as sub-contractors, the work outlined herein and on the terms and conditions therein stated, for and under appellant as principal contractor, which offer appellees accepted:

"Associated Painting Contracting Co.
"P. O. Box 909
"Birmingham, Alabama.
"Dear Sirs:

"Subject to the approval of the State Highway Commission of the State of Texas and Jefferson County, Texas, and its Engineers, and of the P. W. A. of yourselves as sub-contractors, this letter will constitute an agreement between us for the field painting of the Neches River Bridge superstructure, P. W. A. Docket 8080-R.

"1: You are to furnish all materials (as outlined hereafter), all tools and equipment, all rigging, all labor, all supervision, and all work and incidentals necessary to complete this field painting to the complete satisfaction of the State Highway Commission of the State of Texas and Jefferson County and the P. W. A. and their engineers and inspectors, all in accordance with specifications and contract for contract No. 2 superstructure.

"2: The touching up of field driven rivets is not included in your work nor is any cleaning occasioned by concrete operations nor scraping and cleaning of faulty shop coat. Where you are instructed by us to perform such work, you are to proceed with same and it is understood you will be paid for such work at actual cost plus 15%.

"3: Painting is to be performed by you in such manner and at such times and under such atmospheric conditions as specifically outlined in Article III of the Specifications to the satisfaction of the engineers and inspectors, and particular attention is directed to these requirements.

"4: All P. W. A. requirements and general conditions and special labor requirements, as contained in the specifica-

tions and contract for contract #2 superstructure are to be considered as specifically written into this agreement and you are to comply with each and every one of them and they are to be an integral part of this agreement. Your attention is especially directed, although not limited to, pages 1 to 21 inclusive, 27 to 47 inclusive, 91 to 94 inclusive, 109 to 112 inclusive and 114 to 127 inclusive.

"5: We have arranged for the purchase of necessary paints and same will be delivered to you to the job site and you will be charged for these paints based upon the actual number of gallons of paint used by you at the following rates:

1st field coat at $2.25 per gallon
2nd field coat at $2.00 per gallon
3rd field coat at $2.50 per gallon

"6: Workmen's Compensation, public liability and property damage insurance are to be carried by you and certificates on prescribed forms are to be submitted.

"7: You are to furnish us without cost to us satisfactory completion bond.

"8: It is understood that you are to start this work at such times as field conditions permit and that you are to prosecute same as quickly as possible and in keeping with field conditions and so that your work will be completed within the time stipulated in the specifications or such extension of time as granted, by the engineers.

"9. Should any phase of your work be unsatisfactory, we reserve the right, upon issuance of ten days notice to you, to take over the completion of the entire field painting work in such manner as we see fit. Should this step become necessary, we shall have the right to take over and use for the completion of this work all rigging and tools which you have at the job site and no further payments will be made to you until the work is completed. Should the total cost under these circumstances be less than the amount of money owed you, the difference will be due you. Should, however, the total cost be in excess of the monies due you, you and your surety will be liable for this excess cost.

"10: It is understood that you will carry out this work with the use of labor which will in no way interfere with other labor being employed on this project by ourselves and other sub-contractors.

"11: In consideration of the above, we agree to pay you the sum of Four and 45/100 ($4.45) Dollars per ton based on

final tonnage of metal work as determined by the State Highway Engineers. Payments will be made monthly on or before the 15th day of each month for 90% of work completed during the preceding month. Final payment of 10% retained will be paid within 30 days after you have completed this work.

"This agreement, as stated above, is made with the understanding that it is subject to the approval of yourselves as sub-contractors by both the State Highway Commission of the State of Texas and Jefferson County and the P. W. A. Your acceptance of this letter will constitute an agreement between us.

"Yours very truly,
"Taylor-Fichter Steel Construction Co. Inc."

This suit was filed by appellees against appellant, praying for the cancellation of this contract, and for $1,308.62 as the reasonable value of the field painting done by appellees on the bridge under the first clause of the contract; and for $2,037.72 as the reasonable value of the work done and material furnished by appellees under the second clause of the contract; and for $730.88 as the value of certain personal property belonging to appellees alleged to have been converted by appellant; and $5,000 as exemplary damages for the willful conversion of appellees' property. For cause of action, appellees alleged that the value of the work done under section 2 was to be paid for on the 1st day of the succeeding month, or within a reasonable time, and that appellant breached this clause of the contract by not making the payments as per the contract; and that appellant failed and refused to make payments for the work done under the first clause of the contract, as therein stipulated, thereby breaching the contract, and that, on such breach by appellant, on the 20th day of April, 1938, appellees declared the contract at an end as of that date, and on that date so notified appellant in writing, and that they ceased working under the contract. It was further alleged that appellant, on receipt of such notice, took over and proceeded to use on the job appellees' rigging and tools, used by them on the job, which appellees say constituted a conversion. Appellees sued for the balance claimed by them for the work done on the bridge, and for the value of their property on the alleged conversion, and for exemp-lary damages predicated on the alleged conversion.

Appellant answered by demurrers, general and special denial, and specially as follows: It was alleged that appellees were bound to furnish appellant written estimates of the amounts claimed by them before the bills for their work were due and payable; that appellees furnished with certain of their bills such written estimates, and that appellees were estopped to deny that it was their duty to furnish written estimates with their bills. It was further alleged that if the payments were not made within the time provided by the contract, such delay in the payments was the result of appellees' conduct in failing to furnish the necessary estimates. It was further alleged that appellees waived the time of payment and their right to declare a forfeiture because payment was not made at the time stipulated in the contract, and that appellees were estopped to declare forfeiture because of the appellant's failure, if it did so fail, to make the payments as per the terms of the contract.

On the conclusion of the evidence, appellant moved for an instructed verdict, which was refused.

Answering special issues, the jury found the following facts: Appellees had done field painting on the bridge in full compliance with section 1 of the contract; appellees also did certain work under section 2 of the contract, in full compliance with the terms of the contract; the value of the work so done was assessed by the jury. It was further found that appellant had converted certain property belonging to appellees which, after a remittitur, was of the value of $730.88; and, that appellees should recover $2,500 as exemplary damages for the willful conversion of the property. It appearing that appellant was entitled to certain credits as against the damages assessed by the jury, judgment was entered for appellees, after allowing such credits, against appellant in the sum of $5,760.07. The court also confirmed the cancellation of the contract by appellees as of the 20th of April, 1938, and decreed that the contract should be of no further effect from and after that date.

The jury made the following additional findings: Appellees did certain field painting on the bridge during the month of February, 1938, for which appellant failed to pay appellees the 90% provided for in

the contract on or before the 15th day of March, 1938; it also found that appellant failed to pay appellees on or before the 15th day of April, 1938, 90% of the field painting done by appellees during the month of March, 1938. Appellant failed to pay by the 1st day of March, 1938, for the work done during the month of February under the second clause of the contract, and also failed to pay for this work within a reasonable time; likewise appellant failed to pay by April 1, 1938, or within a reasonable time, for the work done on the bridge under the second clause of the contract. The jury also found that appellees performed certain work on the bridge under both the first and the second clauses of the contract during the month of April, and assessed the value of this work, and that appellant had not paid for this work.

Answering special issues requested by appellant, the jury found the following facts: Appellees did not agree to present written bills covering work claimed to have been done by them as a prerequisite to payment; nor did they agree to list and allow credits on their written bills for amounts due by them to appellant up to the time of presenting their written bills. Appellees did not intend to waive strict compliance by appellant with the contract as to the time of payment. Appellant's check dated April 11, 1938, for $3,455.10, payable to appellees, was not delivered to Mr. Raptis on April 18, 1938, nor was it delivered to Mr. Raptis on April 19, 1938. Appellees used 187 gallons of the first field coat as supplied by appellant by April 20, 1938; they used 120 gallons of second field coat as supplied by appellant by April 20, 1938. One-half of the cost of the paint house, constructed by appellant for appellees on the bridge site in December, 1937, was the sum of $97. Up to April 20, 1938, appellees used 79 gallons of gasoline supplied by appellant. Appellant paid $1.58 express charges for the account of appellees on purchases shipped to Port Arthur. The check delivered by appellant to appellees at Port Arthur in January, 1938, was not tendered in a reasonable time. The check delivered by appellant to appellees in February, 1938, was not tendered in a reasonable time. Appellant's check of date April 11, 1938, in favor of appellees in the sum of $3,-455.10, was not tendered in reasonable time.

From the judgment against it, appellant has duly prosecuted its appeal to this court.

■ On the jury's verdict, in effect, that appellant had breached its contract by failing and refusing to make the payment as per the terms of the contract, appellees had the legal right to declare the contract at an end, and to cease working on the bridge, on the following proposition by 9 Am.Jur. 53: "The failure to pay an installment of the contract price as provided in a building or construction contract is a substantial breach of the contract, and gives the contractor the right to consider the contract at an end, to cease work, and to recover the value of the work already performed."

See, also, 7 Tex.Jur. 608; Kidd-Scruggs Co. v. Tyler Hotel Co., Tex.Civ.App., 270 S.W. 566.

■ We pretermit a discussion of all assignments presenting defenses against the failure to pay for work done under section 2 of the contract. This was work to be assigned appellees only at the option of appellant, and that portion of the contract was at will. The failure to pay for such work on time gave appellees the right of rescission entirely independent of the right of rescission for failure to pay for the painting under section 1 of the contract. So, if it should be conceded that appellees waived the time of payment as to work done under section 2 such waiver would not defeat their right to claim rescission for a failure to pay as per contract for work done under section 1. 10 Tex.Jur. 334; Read v. Gibson & Johnson, Tex.Civ. App., 12 S.W.2d 620. All payments made by appellant to appellees prior to April 1, 1938, were for work done under section 2 of the contract. We take the following statement from appellees' brief on the issue of the time of payment for work done under the contract in question:

"The only payments made at all prior to the rescission of the contract by appellees were made for extra work done theretofore. Though the fact that appellant made payments late for extra work would have justified and did justify appellees in rescinding the separate provision of such writing for performing extra work under the clear doctrine of the law as above set out, appellees would not have been justified in rescinding the principal contract for field painting if payments had been made on time for such field painting; and conversely it must stand that appellees could not be estopped from demanding payment for the principal contract work

of field painting on due dates by any acceptance on their part of late payments for the performance of extra work.

"In order that the court may have before it in considering this particular point, I shall here set out the payments made prior to the rescission of the contract by appellees with respect to the different types of work performed as to dates: Extra work performed during the latter part of November and the month of December, paid January 26. Extra work performed during January, paid February 14. Extra work performed during February, check received April 22. Extra work performed during March, check received April 22. Extra work performed during April, recovery had in judgment in court below. A small amount of field painting work performed in January, no payment. Field painting work performed in February, no payment. Field painting work performed in March, no payment. Field painting work performed in April, no payment.

"In the check received by appellees on April 22, there was $416.00 included to apply on field painting work performed prior to April 1.

"These above performances and dates of payment and failures to make payment are undisputed in the record and it can be seen clearly from the record that appellant never made any payment to appellees for field painting work."

■ The check received by appellees from appellant on the 22nd of April, 1938, dated April 11, 1938, in the sum of $3,455.-10, was for work done on the bridge prior to April 1, 1938, and included a payment of $416 for field painting under section 1, done prior to April 1, 1938, and this payment of $416 was the first and only payment made by appellant on the field painting. So, on our conclusion that section 1 and section 2 present the issue that the contract was not entire but severable, appellees committed no act estopping them from declaring a rescission for failure to pay for, according to the terms of the contract, the work done under section 1. The fact that appellees indulged appellant in the delay in making payments due under section 1 did not work an estoppel against them to declare the forfeiture under section 1. 13 C.J. 616; 17 C.J.S., Contracts, § 432; Galveston, H. & S. A. Ry. Co. v. Johnson, 74 Tex. 256, 11 S.W. 1113. As stated above, appellees received a check from appellant on the 22nd day of April, 1938, for the sum of $3,455.10, to be applied by them as a credit for work done on the bridge prior to April 1st. This check was not received until after rescission had been declared, and the rights of the parties thus fixed by rescission. The fact that appellees subsequently cashed the check, giving appellant due credit, did not work an estoppel against them to assert the rescission as declared on the 20th of April.

What we have said overrules all of appellant's assignments that the court erred in refusing to instruct a verdict in its favor on the ground that appellees, on the undisputed evidence, as a matter of law, were estopped to declare the rescission on the contract on the 20th of April. For the same reason we overrule all assignments against the refusal of the court to submit certain special issues on the issue of estoppel.

■ P. V. Pennybacker, one of appellees' witnesses, testified that the work done by the appellees on the bridge, both under section 1 and section 2 of the contract, was approved, and was completed in accordance with the contract. Appellant complains that the court erred "in refusing the appellant the right, upon cross examination, to show by this witness that none of the work claimed to have been completed by the appellees was completed in compliance with the terms of the contract, but was so defective that it was finally rejected and the appellant was required to re-do the work, which testimony was admissible for impeachment purposes of the Engineer Pennybacker, who had charge of the inspection for the state and county and which testimony, if the court had permitted the same for the consideration of the jury, would have been relevant upon a material issue as to whether appellees had complied with the contract and should have been permitted for impeachment purposes of the witness Pennybacker upon a material and disputed relative issue of fact."

Appellant also complains that the court erred "in refusing permission to the appellant to show by its engineer, Kapelsohn, who had charge of the work for the appellant in the construction of the bridge in question, that at least (75%) seventy-five per cent. of the work as done by the appellees in the way of cleaning and scraping and painting was defective, was not in compliance with the provisions of the contract, and was so defective that the En-

gineer Pennybacker for the state and county, who had authority to act under the contract, finally rejected such work as done by the appellees and required the appellant to redo it at a cost to the appellant of at least seventy-five (75%) per cent." On the following statement taken by us from appellees' brief, these contentions are overruled:

"The cleaning, scraping and red-leading of the Neches River Bridge was by the provisions of the contract between the parties to this suit expressly excluded from the work of appellees as follows:

" 'The touching up of field driven rivets is not included in your work nor is any cleaning occasioned by concrete operations nor scraping and cleaning of faulty shop coat.'

"Such work was, therefore, the work of appellant, and appellees in doing such work did so under the actual direction and supervision of the officer of appellant in charge of the bridge, S. D. Kapelsohn, and in doing so were merely employees or servants of appellant, and appellees were not responsible for the way the work was done, they having no say about how such work was done and there being no specifications for them to live up to in doing such work, and if such work was not sufficiently done then the party at fault for such work not being done was appellant and not appellees, they being only servants of appellant, acting under its direction and supervision.

"And further, a considerable portion of this work was done by other servants and employees of appellant under its direction and supervision, and under the testimony of P. V. Pennybacker, in the bill of exceptions itself, any redoing of such work was caused by faulty cleaning, scraping and re-touching of shop coat operations only, which was the exclusive work of appellant, and any blame, fault or loss occasioned by any failure to properly do such work must be borne by appellant alone, and appellees are entitled to recover as they did recover judgment for the cost of work and labor expended, monies advanced, tools furnished, and supervision furnished for the doing of such work as the employees and servants of appellant."

We give appellant's 36th proposition:

"The undisputed evidence showing that appellees never applied any third field coat of paint and only a small amount of second field coat paint and paragraph 11 of the contract as to the making of any payment as to paint, providing:

" '11. In consideration of the above, we agree to pay you the sum of Four and 45/100 ($4.45) Dollars per ton based on final tonnage of metal work as determined by the State Highway Engineers. Payments will be made monthly on or before the 15th day of each month for 90% of work completed during the preceding month. Final payment of 10% retained will be paid within 30 days after you have completed this work.'

"None of the work as to the field painting had ever reached the point where it was an occasion for the making of a payment by the 15th of any month or on any other date, and it was therefore error for the trial court to refuse to give appellant's requested charge No. 2 reading:

" 'Gentlemen of the Jury: You are instructed that you cannot allow the plaintiffs in this suit any recovery as to any sum of money for any of the field painting claimed to have been done by the plaintiffs.' "

This contention is denied. On appellant's theory of the case, appellees were not entitled to payment for any work done until all the work had been completed; the first coat, a second coat, and third coat. The theory of the contract was that the work should be paid for in installments as the work progressed.

The court did not err in refusing to submit certain issues to the jury on the theory that the check for $3,455.10 was received in Port Arthur, but not delivered to appellees, on or prior to April 5, 1938. The failure of appellant to pay for the work done in January and February, under section 1, gave appellees the right to declare a rescission; this work was not paid for by the 15th of the month following its performance.

We overrule all assignments complaining of the manner of the submission of the issue of conversion of appellees' property, and of the finding of the jury as to its value.

We sustain the assignment that the evidence is insufficient to support the finding of exemplary damages. Section 9 of the contract gave appellant the right, on the conditions therein, "to take over and use for the completion of this work all rigging and tools which you have at the job site." While the facts sustain the find-

ing of the jury on the issue of conversion, there was a bona fide dispute between appellant and appellees on many issues in the execution of the contract. Without bringing forward all these facts and circumstances, it is our conclusion from the record, as a whole, that appellant did not convert the property with "malice" and under circumstances sustaining the finding of exemplary damages.

The judgment of the lower court is in all respects affirmed except as to the issue of exemplary damages; on that issue the judgment is reversed and the cause remanded to the lower court.

Affirmed in part, and in part reversed and remanded.