**FISCHER et al. v. RICHARD GILL CO.**
No. 12465.

Court of Civil Appeals of Texas.
San Antonio.

Nov. 26, 1952.

Rehearing Denied Dec. 31, 1952.

William E. Remy, Frank S. Huson and Byron Poulis, San Antonio, L. Karlton Mosteller, Oklahoma City, Okl., Remy & Burns, San Antonio, for appellants.

Carl Wright Johnson and M. W. Terrell, San Antonio, for appellee.

NORVELL, Justice.

After a trial before the court without a jury, judgment was rendered in favor of the plaintiff, Richard Gill Company (hereinafter referred to as Gill) and against defendants, Mrs. Max Fischer, Ray F. Fisch-

er and Frank K. Butcher, for the sum of $1,097.50. Defendants have appealed and plaintiff has filed cross-assignments of error, contending that it was entitled to a recovery of $2,090.

The facts are for the most part undisputed and no findings of fact or conclusions of law were requested or filed. The theory upon which plaintiff was allowed a recovery was that defendants had exercised a form of duress upon plaintiff, referred to in the briefs as "business compulsion," and thus acquired from plaintiff certain monies which in good conscience they should not be allowed to retain. For a discussion of the doctrine, see 15 Tex.Jur. 761, Duress and Coercion, § 3; 17 Am.Jur. 879, Duress and Undue Influence, § 7.

At the time of the transactions complained of, defendants were engaged in business as a partnership under the name of M. F. Fischer & Son. This firm was dissolved prior to the trial of this suit, but the details thereof and the legal relationships among the former partners arising therefrom are not material to a decision of this appeal. For convenience, this partnership will be hereinafter referred to as "Fischer."

It appears that during the year 1946, Bruce Roberts, Inc., an organization controlled and directed by Bruce Roberts, had contracts with seven property owners to construct dwelling houses for them. In order to secure the payments provided for by these contracts, mechanics' and materialmen's liens were secured and transferred to Gill, in accordance with an arrangement for financing these building projects. From time to time, Gill advanced money to Bruce Roberts, Inc., as the work on the buildings progressed. Bruce Roberts, Inc., entered into an agreement with Fischer whereby the latter company agreed to do the plumbing work upon these seven houses.

During July of 1946, Bruce Roberts disappeared, leaving his building organization indebted to numerous mechanics, materialmen and subcontractors, including Fischer. As Gill was involved financially in the projects of Bruce Roberts, Inc., it undertook to secure the completion of the jobs already under construction so as to protect the mechanics' and materialmen's liens which had been assigned to it. With the disappearance of Bruce Roberts, Fischer ceased work upon its plumbing contracts. Gill made inquiry of the Fischer concern for the purpose of ascertaining the status of the plumbing work and entered into negotiations for the completion thereof. Fischer notified Gill by letter, dated August 1, 1946, that some of the payments due to it upon its plumbing contracts with Bruce Roberts, Inc., were past due and that it "would not be able to work on any of Mr. Roberts' jobs until these payments were brought up to date and some arrangements made for the continuance or the closing out of these jobs." Negotiations between the parties eventually culminated in a contract evidenced by a letter dated August 27, 1946, from Gill to Fischer, which contained the following:

"From the data you have furnished us regarding the seven (7) houses contracted to be built by Bruce Roberts, Inc., and on which we hold Mechanics Lien Notes, we understand the matter insofar as you are concerned stands as follows:

| Owner | Address | Contract Price | Paid on Contract | Balance Due |
|---|---|---|---|---|
| Robert L. Scott | 345 Roselawn | $946.00 | $473.00 | 0 |
| L. Pearson | 2614 W. Huisache | 695.00 | 347.50 | 0 |
| R. R. Cutter | 317 Seeling Blvd. | 695.00 | 347.50 | $347.50 |
| J. M. Gray | 504 Sunny Slope | 735.00 | — | 367.50 |
| Dr. L. E. Molak | 2614 W. Huisache | 695.00 | — | 347.50 |
| E. L. Turner | 231 Roselawn | 750.00 | — | 750.00 |
| John E. Chamberlain | 2702 W. Huisache | | | 278.00 |
| | | | | $2,090.50 |

"Work on the Cutter and Turner houses had been completed and the people have moved in; work on the Chamberlain house has been abandoned and the lien given thereon released; and work on the other four (4) houses is about half completed.

"Although we told you that we had paid out the full contract price on the Cutter and Turner houses, and had paid out so much on the other four (4) houses that there was not on hand on July 23, 1946 (the date we first learned that Bruce Roberts, Inc., had abandoned the jobs and the whereabouts of Bruce Roberts was unknown, and that we knew of your claims) sufficient to pay for the material and work to finish them, except the Molak house, you stated that you would not finish the work on the Scott, Pearson, Gray and Molak houses until you were paid in full for all of the work done by you on all the houses, but that if we paid you in full therefor you would promptly finish the work on them if we would pay you for the work on them as soon as it is finished.

"While, as stated to you, we do not think we are in any way liable for the work done and the material furnished by you on the houses prior to July 23, 1946, and for which you have not been paid, we desire to have the Scott, Pearson, Gray and Molak houses completed as soon as possible, and we see no alternative but to accept your proposition.

"We are, therefore enclosing our check on the National Bank of Commerce, payable to you, for $2,090.50 in full payment for the work done and the material furnished by you on all the houses up to July 23, 1946, you having done no work on any of the houses since that date, with the express understanding that you will promptly complete your work on the Scott, Pearson, Gray and Molak houses, and as soon as the work is completed we will pay you therefor."

Upon receipt of this letter and plaintiff's check, Fischer completed the work on the houses involved and was paid an additional sum of $1,267.50. These two sums, $2,090.-50 and $1,267.50, represent the contract price for the plumbing work originally agreed upon by Fischer and Bruce Roberts, Inc.

On April 29, 1947, Gill brought this suit to recover the $2,090.50 paid to Fischer in August of 1946.

The trial court's judgment of $1,097.50 represents the sum of $347.50 and $750, the amounts which were unpaid by Bruce Roberts, Inc., on the Cutter and Turner houses which had been completed. A portion of the amount of the check enclosed in the letter of August 27, 1946, was represented by these items.

The trial court apparently considered that seven separate contracts were involved. As we see it, there was but one contract as between Gill and Fischer, regardless of the number of contracts that may have existed between Fischer and Bruce Roberts, Inc. However that may be, we are of the opinion that plaintiff's claim for $1,097.50 (awarded by the trial court) or for $2,090.50 (represented by the entire amount of the check of August 27, 1946) necessarily fails for the reason that it does not appear that Fischer violated any contractual obligation or committed an illegal act in connection with the transaction Prior to August 27, 1946, Fischer had no contractual relations with Gill. Its contract was with Bruce Roberts, Inc., and it is undisputed that Roberts had failed to pay Fischer for materials furnished and labor performed prior to August 1, 1946. Fischer simply told Gill, after the latter had taken over the Bruce Roberts, Inc., projects to protect its interests, that it would carry out and complete the Roberts contract if paid the price agreed upon, but would not complete the contract unless it was paid as therein prescribed.

After Bruce Roberts, Inc., had made default in the payments provided for in the contract, Fischer was clearly within its legal rights in stopping work on the contract. Kidd-Scruggs Co. v. Tyler Hotel Co., Tex.Civ.App., 270 S.W.2d 566, wr. ref.; Taylor-Fichter Steel Const. Co. v. Curtis, Tex.Civ.App., 144 S.W.2d 285, wr. dism. judgm. corr.; 7 Tex.Jur. 607, Building and Construction Contracts, § 79. Fischer was under no legal or moral obli-

gation to complete the work for Gill. "It is a part of every man's civil rights that he be left at liberty to refuse business relations with any person whomsoever whether the refusal rests upon reason or is the result of whim, caprice, prejudice or malice." 2 Cooley on Torts (3d Ed.) 587, quoted with approval in Metro-Goldwyn-Mayer Distributing Corp. v. Cocke, Tex. Civ.App., 56 S.W.2d 489, 490.

 The matter of Fischer's proceeding with the plumbing installations and the amount it was to be paid therefor were proper matters to be settled by negotiations between the parties. Fischer was guilty of no wrong in insisting that its demands be met before it would contract with Gill, and a claim of duress by business compulsion can not be based upon doing or threatening to do that which a party has a legal right to do. Ward v. Scarborough, Tex.Com. App., 236 S.W. 434; Dale v. Simon, Tex. Com.App., 267 S.W. 467; 10 Tex.Jur. 76, Contracts, § 44; 17 C.J.S., Contracts, § 177, page 535.

There is a suggestion in the evidence, which is wholly undeveloped, that Fischer had some arrangement with other plumbing contractors whereby none of them would complete the plumbing work upon the houses involved. Frank K. Burcher, one of the Fischer partners, denied the existence of any such agreement, arrangement or practice. All that Gill pleaded concerning the matter was that Fischer demanded that it be paid the price agreed to by Bruce Roberts, Inc., "knowing full well if they (Fischer) failed or refused to complete the work, that under the circumstances no other plumber would do so."

The evidence upon the point was that Gill's representatives discussed the matter with two or three plumbing contractors who said they would not be interested in completing the work, and that an electrical contractor said he doubted if any other plumber would take over the job. One witness testified that a representative of Fischer remarked that "no one else would do the work," at the time the price and terms for finishing the plumbing work

was stated. This fragmentary and inconclusive testimony was in law no evidence that Fischer was a party to an illegal conspiracy or agreement to keep other plumbing contractors from taking over the work. Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059; Austin v. Neiman, Tex.Com.App., 14 S.W. 2d 794. As the evidence fails to show that Fischer committed an unlawful act in demanding that it be paid according to the terms of the original Bruce Roberts, Inc., contracts before it agreed to complete the work, Gill's claim of duress fails and it becomes our duty to render such judgment as the trial court should have rendered. Rule 434, Texas Rules of Civil Procedure.

The judgment appealed from is reversed and judgment here rendered that appellee (plaintiff below), The Richard Gill Company, take nothing.

Reversed and rendered.